UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHELLE ENGEL,

        Plaintiff,

v.

                                                                             Case No. 21-cv-1042-bhl

KILOLO KIJAKAZI, Acting Commissioner of
Social Security Administration,

        Defendant.

## DECISION AND ORDER

Social Security hearings "should be understandable to the layman claimant." *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The vocational expert's testimony in this case falls well short of that standard. Based in part on that expert's testimony, Plaintiff Michelle Engel seeks a summary judgment order reversing and remanding the Commissioner of Social Security's decision denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the motion will be granted.

### PROCEDURAL BACKGROUND

Engel applied for DIB and SSI in February 2020. (ECF No. 19 at 2.) Her claim was denied initially and on reconsideration, so she sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on January 21, 2021. (ECF No. 9-1 at 54.) In a decision dated March 1, 2021, the ALJ found Engel "not disabled." (ECF No. 14 at 7.) The Appeals Council denied her request for review, and this action followed. (ECF No. 19 at 3.)

### FACTUAL BACKGROUND

At the time of her hearing before the ALJ, Engel testified that she lived in a two-bedroom apartment with her adult daughter and worked part-time at the customer service desk at Bed, Bath, and Beyond. (ECF No. 9-1 at 61.) She also mentioned that she had published her poetry and short stories in a few literary magazines. (*Id.* at 63-64.) She asserted that she was unable to work full-time because of a combination of her obesity, bipolar disorder, schizoaffective disorder, anxiety, and depression, all of which the ALJ considered severe impairments. (ECF No. 14 at 10.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citations omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Engel argues for remand because: (1) the ALJ failed to ensure that the vocational expert's (VE) job-number estimates were the product of a reliable method; (2) the ALJ's RFC assessment was unsupported by evidence or logical explanation; and (3) the Commissioner of Social Security holds her position on a constitutionally illicit basis. Because the first of these constitutes reversible error, the case will be remanded for further consideration.

### I. The ALJ Failed to Ensure the VE's Job-Number Estimates Were the Product of a Reliable Method.

When a claimant's severe impairments do not presumptively establish a disability but nevertheless preclude the claimant from performing past relevant work, an ALJ turns to a VE to determine whether there exists in the national economy a significant number of jobs that the claimant can perform. 20 C.F.R. § 404.1512. The VE is not required to perform a literal headcount of jobs in existence; she must only advance a reasonable approximation. *See Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). That said, when a claimant calls into question the reliability of the VE's conclusions, an ALJ "must require the VE to offer a reasoned and principled explanation" in support. *Id.* at 970. In other words, "the substantial evidence standard requires the ALJ to ensure that the [VE's] approximation is the product of a reliable method." *Id.* at 968.

In this case, the ALJ determined that while Engel was not presumptively disabled, she could not perform any past relevant work, and thus sought a VE's appraisal of what jobs, if any, Engel could work based on her assessed residual functional capacity (RFC). (ECF No. 14 at 10.) After considering hypotheticals that incorporated Engel's RFC, the VE identified a number of jobs—like housekeeping cleaner, small products assembler, and collator operator—that Engel could perform and that existed in significant numbers in the national economy. (ECF No. 9-1 at 78.) Given the large number of employment opportunities available to her, the ALJ found Engel "not disabled."

Engel contends that the ALJ failed to elicit testimony to ensure that the VE's job-number estimate was not "conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). The VE's murky method for tallying jobs, she asserts, does not inspire confidence in the accuracy of the numbers produced. In response, Defendant argues that Engel waived any challenge to the propriety of the VE's estimate, and even if she did not, the VE's testimony establishes that her numbers resulted from a reliable method.

"When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *Id.* A claimant, therefore, "waive[s] any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates." *Coyier v. Saul*, 860 F. App'x 426, 427-28 (7th Cir. 2021). "But the claimant does not need to make a formal objection." *Courtney v. Berryhill*, 385 F. Supp. 3d 761, 763-64 (W.D. Wis. 2018). What matters is whether cross-examination provokes "statements that . . . call[] into question the reliability of the VE's bottom-line conclusions." *Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008).

Here, Engel's counsel asked the VE: "[W]hat is the methodology that you use to come up with your job number estimates?" (ECF No. 9-1 at 81.) She replied:

> Sure. And so, the first step to actually calculate my [Dictionary of Occupational Titles (DOT)] estimates is to start with the total number of jobs in each OES group, which is the Occupational Employment Survey group. And then I find the percentage of the actual DOT estimate within that grouping, the OES group. And then I multiply that percentage by the total number of jobs. And this gives me the total number of jobs for that particular DOT within the national economy for the OES group, which again is the Occupational Employment Survey. And then I further filer that by fulltime only jobs. So, this will give me fulltime jobs for that particular DOT in the entire national economy for the OES.

(*Id.* at 82.) This answer, to the extent comprehensible, is worrisome. The ALJ apparently felt similarly. At the conclusion of cross-examination, he took over and further questioned the VE in an attempt to solidify the reliability of her method. (*Id.* at 82-85.) But her answers were illuminating for all the wrong reasons.

When asked to estimate jobs in the national economy, VEs normally use one of two methods: the equal distribution method or the occupational density method. *See Dawn L.C. v. Comm'n of Soc. Sec.*, No. 3:20-cv-00626-GCS, 2021 WL 4488421, at *6 (S.D. Ill. Sept. 24, 2021). Regardless of the method employed, the question remains "how to translate the OES data into job number estimates for the DOT jobs despite the classification mismatch." *Bruno v. Saul*, 817 F. App'x 238, 243 (7th Cir. 2020).[1] And either method is fine as long as the VE offers "a 'reasoned and principled explanation'" to justify its use. *Id.* (quoting *Chavez*, 895 F.3d at 970).

In this case, it is hard to say what method the VE used. In her explanation, she told Engel's counsel that she starts with the OES numbers and then "find[s] the percentage of the actual DOT estimate within that grouping." (ECF No. 9-1 at 82.) But finds it how? Translating the data is the whole game. This is akin to telling a medical student to perform a heart transplant by gathering all of the necessary tools and then "transplanting the heart." A VE's job-number estimate will survive review if it derives from "a well-accepted methodology" that the VE explains "cogently and thoroughly." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019). The VE's opaque explanation does not suffice.

Further testimony did not prove edifying. When asked why she believed her methodology was reliable, the VE said:

> [T]he reason I find this to be a reliable source of numbers is because rather than using the formulated—you can plug in and get actual tabulations. But this allows me to directly acquire the numbers myself. And the Occupational Employment Survey is direct responses from employers who hire these particular occupations in the field. So, it's a reliable source because these are actual employers being asked who hired what jobs.

(ECF No. 9-1 at 83.) This answer seems to defend the reliability of the OES, but that is not what the ALJ asked for. The VE also stated that the numbers her method produced correlated with what she would expect, *i.e.*, that housekeepers outnumber officer helpers and small products assemblers outstrip collator operators. (*Id.* at 84.) But the fact that a method identifies more housekeepers

---

[1] The DOT was last updated in 1991, so it describes jobs that have changed and disappeared. *See Chavez*, 895 F.3d at 965.

than office helpers cannot, by itself, render that method reliable. *See Chavez*, 895 F.3d at 969. After all, even a VE who spins job numbers from thin air could meet this lax standard.

In an attempt to bypass these problems, Defendant argues that even if the VE's method produced an abnormally large margin of error, she identified jobs so plentiful (about 584,000) that even the dregs qualify as significant. *See Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (holding "significant" as few as 1,000 jobs nationally). But big numbers mean nothing without a sound methodology behind them. *See Brace v. Saul*, 970 F.3d 818, 823 (7th Cir. 2020) ("An unreliable job-number estimate cannot be considered reliable merely because it is large."); *Chavez*, 895 F.3d at 970 (explaining that regardless of how many jobs the VE estimated, the method used was unreliable, so the record did not permit a finding "that the estimates reasonably approximate the number of suitable jobs that exist for [the claimant]").

At bottom, the VE "failed to set forth an understandable methodology," so the Court "cannot review her methodology, let alone confirm that it was reliable." *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022). "Trust me; I'm an expert" is not a basis on which to deny someone's request for disability payments. Here, the VE's testimony does nothing to assuage the fears that her job-numbers estimate might "be a fabrication." *Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015). As a result, it does not satisfy the substantial evidence standard, and the ALJ was not entitled to rely on it. *See Brace*, 970 F.3d at 823 (7th Cir. 2020).

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment, ECF No. 14, is **GRANTED**. Pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated at Milwaukee, Wisconsin on October 17, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge